MURRAY SEASONGOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AGNES SEASONGOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MURRAY SEASONGOOD AND AGNES SEASONGOOD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42537, 42538, 42539.   Filed June 28, 1954.

*James D. Long, Esq., Harry Stickney, Esq.*, and *Murray Seasongood, Esq.*, for the petitioners.

*R. G. de Quevedo, Esq.*, for the respondent.

676

## OPINION.

BRUCE, *Judge:* Petitioners seek deduction under section 23 (o), In ternal Revenue Code,[1] of certain contributions, as set out in our findings, to the League, the Fund, and the Cincinnati League of Women Voters. In the alternative, the petitioner Seasongood claims the contributions made by him to these three organizations are deductible

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*     *     *     *     *     *     *

(o) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of:

*     *     *     *     *     *     *

(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *

under section 23 (a) (1) (A), Internal Revenue Code,[2] as ordinary and necessary expenses in carrying on business.

Section 23 (o) and section 101 (6),[3] Internal Revenue Code, are similarly worded in their description of organizations coming within their terms. It follows that a corporation not entitled to tax exemption under section 101 (6) does not afford a tax deduction under section 23 (o) to individuals contributing to its activities. Our inquiry is as to whether either one or all of the three organizations here in question are entitled to exemption under section 101 (6), or, in other words, whether in the case of any one a substantial part of its activities in the taxable years was in "carrying on propaganda, or otherwise attempting, to influence legislation."

The provisions of the applicable sections recognize the fact that organizations formed for purely educational or charitable purposes may in the course of their existence as an instance of their activities, be forced to take part in some political activity. Only when such activities constitute a *substantial part* of their general activities is the relief provision of the section withheld. If, however, a *substantial part* of the organization's activities is political in character, as contrasted with activities purely religious, educational, or charitable, it does not suffice to show that such activities were carried on with the highest motives and admittedly in the public interest. Efforts to convince the voters that certain candidates are best fitted for a public office or that certain legislation is for the public good are activities of a political nature. They do not qualify under the statute as educational.

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.
(1) TRADE OR BUSINESS EXPENSES.—
(A) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, ef property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

[3]                     SUBCHAPTER C—SUPPLEMENTAL PROVISIONS
[Supplement A—Rates of Tax]
[Supplementary to Subchapter B, Part I]
SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.
Except as provided in paragraph (12) (B) and in supplement U, the following organizations shall be exempt from taxation under this chapter—

*        *        *        *        *        *        *

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *

Under the facts as here presented it is clear that the League was organized for and operated at all times unselfishly in the public interest as such interest appeared to its members, and the facts set out in our findings convince us that the greater portion of its activities falls within the category of charitable or educational ones. Thus its work in carrying on the Cincinnati Forum of the Air, allowing a discussion by the public of questions affecting the public interest, and its activities in educating the public as to the importance as a health measure of rodent control, together with its very considerable work in urging and educating the public on the necessity of exercising the right to vote, irrespective of party or stand on political questions, cannot be considered as political activities; nor its activities in endeavoring to maintain objects of historical value, as these are, in a broad sense, charitable activities.

In addition to the foregoing activities, the League carried on through its Legislative and Election Machinery committees activities which were definitely political in character and which appear to us to represent a substantial part of the general activities of the organization. We have set out in our findings the reports of these committees for the years in question. These indicate very active and unselfish work by the members of the committees in investigating proposed legislation and making a study of necessary legislation to effect some public purpose. The League, on the recommendation of these committees, endorsed candidates for political office and sponsored or opposed legislation through contacts with the legislative authorities. It is indicated that these activities consisted largely, if not entirely, of personal efforts and work on the part of the individual members of the committees and of the League and were not of a character to involve the expenditure of its funds. The League did not employ individuals for this work, but on the facts as disclosed by the record we are convinced that the activities of this character constituted a *substantial part* of all of the activities of the League.

We had a situation very similar to this in *John H. Watson, Jr.*, 27 B. T. A. 463, where we said:

In the instant case the members of the League would perhaps paraphrase the purpose of the League as "the bringing about of better local government and the election of better fitted men to office." But in the very statement they assume the soundness of their conclusions and the accuracy of their judgment of fitness. Furthermore, they impute that those not in agreement with the League are mistaken in their philosophy and unsound in their judgment. Any organization such as that under consideration is obviously partisan in the broad sense of that term. It has its own concept of what constitutes good government and its own criteria by which to judge candidates for office, and it suggests its conclusions to others. To this extent it is an advocate. And though advocacy may be but a natural expression of sincerity of belief, it also tends to

indicate the point at which education ends and, in this case, political activity begins.

On the facts before us we are not convinced that the Citizens League of Cleveland was organized and operated exclusively for educational purposes. The classification of candidates and the publishing as paid advertisements of such classification went beyond the education of the public. The obvious purpose of such advertisements was to promote the election of "preferred" candidates. This was a political activity, however laudable the aim in the opinion of the members of the League. Similarly, the League presented its conclusions and, by proper inference, it recommended actions to the legislative authority. Here again it assumed the role of an advocate in political matters.

We do not think that respondent erred in denying the League tax exemption under section 101 (6) and in denying the petitioners the deduction of their donations to the League under section 23 (o).

As to the status of the Cincinnati League of Women Voters, little discussion is necessary. Its purposes, as set out in its constitution, are very general in character and do not preclude political activities. In *Charles W. Dahlinger*, 20 B. T. A. 176, we held a contribution to the Pennsylvania League of Women Voters as deductible under section 214 (a) (11) of the Revenue Act of 1921 where the prescribed conditions are comparable to those carried in section 23 (o), Internal Revenue Code. There, however, we found upon the record that that organization was organized and operated in the taxable years exclusively for educational purposes and a contribution to it was held to be deductible by the donor. In *Henriette T. Noyes*, 31 B. T. A. 121, we had a case of a donation to the Minnesota League of Women Voters. This League was not incorporated but its purposes were stated in its bylaws as fostering "education in citizenship and to support needed legislation." Its activities during the year in question were shown to consist largely of efforts in supporting proposed legislation, and the deduction of the donation to it was denied. In *Luther Ely Smith*, 3 T. C. 696, we had the question of a donation to the St. Louis League of Women Voters and upon the record there found that the activities of this organization in the taxable year were educational in character and no political activities in that year were indicated. Upon this showing the deduction of the contribution was allowed.

In the present case the Cincinnati League of Women Voters, as in the *Dahlinger* case, is shown to have a constitution and bylaws which are very general in character and do not preclude its engaging in political activities. In addition, the record is silent as to the actual activities of this organization during the years involved, and there is accordingly no evidence even tending to show that respondent erred in denying the organization tax exemption under section 101 (6) and in disallowing the deduction by petitioners under section 23 (o) of their donations to this organization in the years here involved.

In respect to the donations made by the petitioners to the Fund, a very different situation exists. This organization was unquestionably formed for purely charitable purposes. Its activities were limited to making donations from its funds to worthy organizations, it being specifically provided in its articles of incorporation that such organizations must so qualify and that no substantial part of their activities must consist of "carrying on propaganda, or otherwise attempting, to influence legislation." For the first 2 years of its existence, which are the ones herein involved, the Fund has been denied by respondent tax-exempt status under section 101 (6). This has been due to what is in fact one instance which began by its authorization, one day before the close of 1948, of a donation of $1,000 to the League and its payment of the donation a few weeks later.

The facts show to our entire satisfaction that the Fund in authorizing and making this donation to the League was acting in the utmost good faith and in the belief that it was entirely within its powers as limited by its articles of incorporation to make donations only to organizations which would qualify under section 101 (6).

Seasongood appears to have been the moving spirit in both the Fund and the League, and it is easy to understand that his opinion of the League's work was that certain of its activities which we have been constrained to treat as political were more in the nature of educational work. His belief in this was further justified by the fact that over the past years he and his wife had made donations to the League and taken deduction of these donations on their returns as allowable under section 23 (o), and such deductions had not been questioned. It is further noted that upon being advised of the view taken by respondent as to the status of the League, steps were immediately taken to rescind the donation and the amount in question was returned to the Fund.

Can it be said on these facts that what was done in the closing hours of 1948 and early in 1949 constituted "carrying on propaganda, or otherwise attempting, to influence legislation?" We think not. Especially is this true when we take into consideration the fact that the funds of the League manifestly were not spent in carrying on the activities which we have questioned. Its income from dues and donations was quite small and appears to have been spent upon the maintenance of an office and telephones and the dissemination of literature on rodent control, registration, and on the operation of its educational program, the Cincinnati Forum of the Air. Upon all the facts we see no indication that the activities of the Fund in the 2 years in question consisted of "carrying on propaganda, or otherwise attempting, to influence legislation." We hold that the donations made by the petitioners to the Fund in the 2 years in question were deductible under section 23 (o).

684

There remains the alternative question as to whether the donations by Seasongood to the League and the Cincinnati League of Women Voters are deductible under section 23 (a) (1) (A) as a business expense.

As our Findings of Fact set out, this petitioner was a prominent lawyer deriving a large income from his law practice and certain additional income from royalties upon a well-known case book on municipal corporations of which he is the author, his salary as a professor of law at Cincinnati University Law School, and certain fees and honorariums received for lectures delivered or articles written by him. He also is in receipt of a substantial income in an undisclosed amount from personal investments.

There is one thing demonstrated very clearly by the record, and that is the tremendous and unselfish interest which this petitioner has in his community and its welfare. Any connection between the donations in question and this petitioner's income from his activities is so tenuous and indirect, if it exists at all, that we fail to see it. It is also difficult for us to recognize these donations as ones made for a business purpose with a view to obtaining additional law business or additional income from his other activities. Cf. *Luther Ely Smith*, *supra*. We cannot reconcile this purpose with his long record of unselfish activity. The donations in question appear to us to have been for personal and not business reasons and consequently are not deductible as ordinary and necessary business expenses under section 23 (a) (1) (A).

*Decisions will be entered under Rule 50.*